**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JONATHAN LAMAR SIMPSON, #380719** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:23cv463** |
| | § | |
| **SHERIFF SKINNER, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Sheriff Skinner, Officer Wolfe, Officer Scott, Officer Oscar, and Lt. Barnett's Motion to Dismiss (Dkt. #18) (the "Motion to Dismiss"). *Pro se* Plaintiff Jonathan Lamar Simpson ("Plaintiff") filed a construed response (Dkt. #22) to the Motion to Dismiss, and Defendants filed a reply (Dkt. #24). For the reasons that follow, the Court recommends the Motion to Dismiss (Dkt. #18) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE.**

## I.    BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this lawsuit against Defendants. Plaintiff is currently confined at the Collin County Detention Facility. Plaintiff's complaint concerns the type of meals served, and how meals were served, to Muslim inmates at the Collin County Detention Facility during the month of Ramadan. Specifically, Plaintiff alleges the following:

> For the entire month of Ramadan the kitchen staff refused to serve meals after sun-set. They also refused to serve us (me) meals that every other inmate received (hot meals). I was also served my evening meals early, so the meals had sat for hours. They also served me dietary meals not listed to my dietary record. I brought these issues to the attention of many pod officers, and also the kitchen staff and supervisors. Documented through grievances/complaints, photos, videos and they were logged in their Spartan device through the pod officers.

1

(Dkt. #1, p. 5).[1] Plaintiff's grievances reflect Plaintiff complained that, during Ramadan, he was served cold meals—such as cold sandwiches, cold cereal, and fruit—instead of hot meals, and received meal trays two hours before he could break his fast (sunset). (Dkt. #1, pp. 7-9; Dkt. #18-1). For relief, Plaintiff requests "[c]ompensation (punitive) for the month of Ramadan" and any additional relief the Court "deems just, proper, and equitable." (Dkt. #1, p. 5).

On October 9, 2023, Defendants moved to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. #18). Defendants urge Plaintiff's claims should be dismissed because Plaintiff failed to comply with the Prison Litigation Reform Act ("PLRA"), fails to allege a cognizable constitutional claim, fails to overcome Defendants' entitlement to qualified immunity, fails to sufficiently plead Defendants' personal involvement, fails to state any viable official capacity claim, and fails to sufficiently allege entitlement to punitive damages. (Dkt. #18, pp. 4-14). Plaintiff filed a construed response to the Motions to Dismiss, stating he "objects to granting [Defendants'] motion to dismiss." (Dkt. #22). Defendants filed a reply, noting Plaintiff's construed response "is completely devoid [of] any analysis, legal or otherwise, merely averring that he 'objects.'" (Dkt. #24).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are disfavored, the Court must accept all well-pleaded facts in the plaintiff's complaint as true, "even if doubtful or suspect," and view them in the light

---

[1] With respect to the individual Defendants, Plaintiff alleges the following: Officer Scott was a kitchen supervisor and denied Plaintiff his "trays for Ramadan and didn't send them at all (that day)"; Officer Wolfe was a kitchen supervisor and "[s]ent trays (2) hours early before 'sunset' and they were sitting and got cold"; Officer Oscar was a kitchen supervisor and sent Plaintiff "a contaminated tray"—the tray "sat for an hour and was passed back and forth"; and Sheriff Skinner and Lt. Barnett failed "to supervise and properly train employees and staff." (Dkt. #1, p. 3).

most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* When considering a motion to dismiss for failure to state a claim, the Court's review is limited to the complaint, any document attached to the complaint, any document attached to the motion to dismiss that is central to the claim and referenced by the complaint, and any facts subject to judicial notice. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

The Court is also mindful it "must construe the pleadings of *pro se* litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dallas Cnty. Jail*, No. 3:20-CV-1697-K-BN, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted), *report and recommendation adopted*, No. 3:20-CV-1697-K, 2022 WL 1213415 (N.D. Tex. Apr. 25, 2022); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-CV-2842-B-BN, 2021 WL 5568168, at *3 (N.D. Tex. Nov.

1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)), *report and recommendation adopted*, No. 3:20-CV-2842-B-BN, 2021 WL 5566769 (N.D. Tex. Nov. 29, 2021).

## III.  ANALYSIS

Liberally construed, Plaintiff's complaint illustrates he is complaining about purported violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, and the Fourteenth Amendment.

### A.  RLUIPA and the First Amendment

RLUIPA provides, in relevant part, that:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(A)    is in furtherance of a compelling governmental interest; and

(B)    is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). It is undisputed that Plaintiff's decision to fast during Ramadan is an exercise of his religion.

Under RLUIPA, the plaintiff carries an initial burden to show that the challenged law, regulation, or practice substantially burdens the exercise of his religion. *See Adkins v. Kaspar*, 393 F.3d 559, 567 (5th Cir. 2004) ("Initially, it falls to the plaintiff to demonstrate that the government practice complained of imposes a substantial burden on his religious exercise."). If the plaintiff carries his burden, then the government bears the burden of persuasion that application of its

substantially burdensome practice is in furtherance of a compelling governmental interest and is

the least restrictive means of furthering that interest. *Id.* at n.32. While the statute does not define

"substantial burden," the Fifth Circuit defined the term as follows:

> [A] government action or regulation creates a "substantial burden" on religious
> exercise if it truly pressures the adherent to significantly modify his religious
> behavior and significantly violate his religious beliefs. . . . [T]he effect of a
> government action or regulation is significant when it either (1) influences the
> adherent to act in a way that violates his religious beliefs, or (2) forces the adherent
> to choose between, on the one hand, enjoying some generally available, non-trivial
> benefit, and, on the other hand, following is religious beliefs.

*Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 613 (5th Cir. 2008) (citing *Adkins*, 393 F.3d

at 570).

RLUIPA unambiguously creates a private right of action for injunctive and declaratory

relief. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub. nom.*,

*Sossamon v. Texas*, 563 U.S. 277 (2011). However, the Fifth Circuit has made clear that monetary

damages are not available for claims against state officials under RLUIPA. *See id.* at 331 (RLUIPA

does not create a cause of action against defendants in their individual capacities); *Copeland v.

Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012) (unpublished) (explaining that "RLUIPA does

not create a provide right of action against individuals for damages"); *DeMoss v. Crain*, 636 F.3d

145, 151 (5th Cir. 2011) ("RLUIPA does not create a cause of action for damages against [the

defendants] in their official capacities, nor does it create a cause of action against defendants in

their individual capacities.") (quotation omitted); *see also Foster v. Dir.*, No. 6:18CV81, 2020 WL

5536013, at *14 (E.D. Tex. Aug. 11, 2020), *report and recommendation adopted sub nom. Foster

v. Dir., TDCJ-CID*, No. 6:18CV81, 2020 WL 5534519 (E.D. Tex. Sept. 14, 2020) ("Damages are

also not available under RLUIPA against any defendants—as state actors—in their official

capacities.") (citing *Sossaman*, 563 U.S. at 280)).

Furthermore, First Amendment protections of free exercise require the government to refrain from interfering with the religious beliefs and practices of individuals. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005) ("The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people."). However, while prisoners retain their First Amendment right to exercise religion, "this right is subject to reasonable restrictions and limitations necessitated by penological goals*." See Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1999).

In order to balance federal constitutional guarantees with the legitimate concerns of prison officials, a court must determine: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest; (2) whether alternative means of exercising the constitutional right are available; (3) what effect accommodating the exercise of the right would have on the prison system and resources; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). No single factor is dispositive, and there is no requirement that all four factors be met. *Scott v. Mississippi Dep't of Corr.*, 961 F.2d 77, 80 (5th Cir. 1992). Where a regulation restricts First Amendment rights in a neutral fashion, it is likely to withstand judicial scrutiny. *McAlister v. Livingston*, 348 F. App'x 923, 932-32 (2009) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989)). Prison officials are afforded great deference in carrying out their complex duties. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987); *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

Here, Plaintiff fails to state a claim upon which relief can be granted under both RLUIPA and the First Amendment Free Exercise Clause. His contentions are inherently contradictory. As mentioned, the crux of his claim concerns the meal service, and the type of meals he received, during Ramadan, which allegedly burdened his religious exercise of fasting during Ramadan.

However, under a RLUIPA analysis, Plaintiff's own words demonstrate jail officials have not substantially burdened the exercise of his religion during Ramadan. Plaintiff does not allege Defendants have denied his right to fast during Ramadan; instead, he maintains that, during Ramadan, he was provided with cold meals instead of hot meals and his meals were delivered before sunset and grew cold by the time he could break his fast. (Dkt. #1, pp. 7-9). Plaintiff's dissatisfaction with the food and the timing of the food delivery does not state a claim that jail officials have placed a substantial burden on his religious exercise, especially because he failed to articulate specific facts suggesting that providing cold meals instead of hot meals or delivering his meals early prevented him from fasting or otherwise exercising his Muslim faith.

Plaintiff's own words also indicate jail officials have not pressured him to significantly modify his religious behavior or influenced him to act in a way that violated his Muslim faith. Plaintiff concedes he was provided meals so that he could eat before sunrise and after sunset. Although on occasion the evening meal may have been delivered before sunset, Plaintiff was not prevented from waiting until sunset to eat the meal in accordance with his religious exercise. Similarly, although Plaintiff may have been served cold meals due to the operating hours of the jail's kitchen and inability of kitchen staff to timely prepare hot meals before sunrise, Plaintiff was not prevented from fasting or eating meals in accordance with his Muslim faith. Accordingly, Plaintiff's own words demonstrate jail officials did not substantially burden his religious exercise of fasting while observing Ramadan. He has failed to allege facts which demonstrate his religious exercise has been substantially burdened. Therefore, Plaintiff has not carried his burden of persuasion and his claims should be dismissed for failure to state a claim upon which relief can be granted. *See DeMoss v. Crain*, 636 F.3d 145, 153 (5th Cir. 2011) ("Although the dayroom policy burdens DeMoss by requiring him to anticipate when he must leave the dayroom to pray, this

burden is not substantial because it does not pressure him to significantly modify his religious behavior or significantly violate his religious beliefs.").

Similarly, under the First Amendment's free exercise clause, Plaintiff's own words indicate jail officials have not interfered with his right to observe Ramadan by fasting. Plaintiff does not allege he was forced to choose whether he would eat or fulfill his obligatory duties in fast and worship. If jail officials provided him and other Muslim inmates with meals before sunrise and after sunset—as he indicates occurred and is in accordance with his religious exercise during Ramadan—then it stands to reason that he was not being forced to choose between eating and exercising his religion. Accordingly, because Plaintiff essentially admits jail officials did not burden or interfere with his religious exercise, as he admits he was able to fast during Ramadan, he has failed to state a claim under RLUIPA or the First Amendment.

Furthermore, to the extent Plaintiff asserts the First Amendment guarantees him a religious diet of his choice, his claim fails. "The Fifth Circuit has never held that inmates of any faith enjoy a First Amendment right to the religious diet of their choice." *Holmes v. Davis*, No. 6:20CV333, 2021 WL 2152544, at *4 (E.D. Tex. Mar. 30, 2021), *report and recommendation adopted*, No. 6:20CV333, 2021 WL 2141486 (E.D. Tex. May 26, 2021). Early Fifth Circuit decisions held that prisons need not respond to particularized religious dietary requests to comply with the First Amendment. *Kahey v. Jones*, 836 F.2d 948 (5th Cir. 1988); *Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986). In *Kahey*, the Fifth Circuit specifically held that the prison was not required to accommodate a Muslim inmate's requirements regarding the content and preparation of his food. *Id.* at 950-51. The court reasoned that the prison had a "legitimate governmental interest in running a simplified prison food service rather than a full-scale restaurant." *Id.* at 950. It found that granting the inmate's request would be expensive, would divert resources from other penological goals, and

8

could result in the perception of favoritism. *Id.* at 951. It also found that there were simply no ready alternatives to satisfy the inmate's personal dietary requirements at a *de minimis* cost to the prison. *Id.*

More recently, in *Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007), the Fifth Circuit considered whether prison officials' failure to provide a kosher diet to Jewish prisoners violated an inmate's First Amendment right to practice his religion. In partial reliance on *Kahey* and *Udey* and after applying the *Turner* factors, the court rejected the inmate's First Amendment claim, noting that vegetarian and pork-free meal options were available for Jewish prisoners, and that providing kosher meals would be extremely costly. *Id.* at 117-18, 121-22. In 2016, the Fifth Circuit held in an unpublished opinion that the First Amendment does not require prisons to provide halal meals to Muslim inmates:

> *Baranowski* resolves the immediate appeal with regard to the First Amendment claim. Plaintiff in *Baranowski* challenged a prison's denial of a kosher diet, and our court rejected his challenge. In doing so, our court noted that, "[i]n *Kahey*, we held that the prison was not required to accommodate a Muslim inmate's request for a kosher diet, with particularized requirements regarding the content and preparation of food." Omran's First Amendment claim likewise fails.

*Omran v. Prator*, 674 F. App'x 353, 355 (5th Cir. 2016), *cert. denied*, 138 S. Ct. 74 (2017) (citations omitted).

Thus, controlling legal precedent shows that a prison food service program is not required to provide a religious diet to any religious group under the First Amendment. Moreover, the Collin County Detention Facility "has a legitimate penological interest in running a simplified prison food service rather than a full-scale restaurant." *Holmes*, No. 6:20CV333, 2021 WL 2152544, at *4 (citing *Kahey*, 836 F.2d at 950). Plaintiff presents no probative facts or evidence controverting the controlling precedent in this Circuit. As discussed, Plaintiff acknowledges Collin County Detention Facility provided him meals and attempted to do so in conformity with his religious

beliefs. Accordingly, Plaintiff has not stated a claim upon which relief can be granted against Defendants based on Collin County Detention Facility's food preparation or service during Ramadan.

## B.  Fourteenth Amendment and Disparate Treatment

Liberally construed, Plaintiff's complaint also asserts that, during the holy month of Ramadan, he and other Muslims were shown disparate treatment in violation of the Fourteenth Amendment because Muslims were provided cold meals while other inmates were provided hot meals. (Dkt. #1, p. 5).

The Equal Protection clause of the Fourteenth Amendment provides "[n]o State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14 § 1. In order to establish a violation of the Equal Protection Clause, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from discriminatory intent." *See Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001); *see also Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) ("To establish an equal protection claim, Gallegos must show that two or more classifications of similarly situated persons were treated differently."). A plaintiff alleging disparate treatment must identify a discriminatory purpose, as that "implies that the decision-maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). Crucially, a plaintiff must allege specific facts supporting a claim of discrimination—as opposed to his or her personal belief that discrimination occurred. *Id.*

Here, Plaintiff wholly fails to state an equal protection claim upon which relief can be granted. Even if he alleged similarly situated inmates, Plaintiff has not articulated or identified a

10

discriminatory purpose. Any allegation Muslim inmates were shown disparate treatment because they received cold meals (sandwiches, cereal, fruit) instead of hot meals like the other inmates is conclusory and does not identify discriminatory intent. Notably, the grievances referenced by Plaintiff demonstrate Plaintiff (and presumably other Muslim inmates) were given cold meals, such as sandwiches or cold cereal, because of the operating hours of the jail's kitchen and inability of kitchen staff to timely prepare hot meals before sunrise. A review of Plaintiff's complaint illustrates he does not articulate any specific facts supporting a claim of discrimination. In this way, any disparate treatment claim shows it is Plaintiff's personal belief Muslims are intentionally treated differently—rather than evincing any specific facts to support such a claim. The Court is not required to entertain the unadorned "the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

As previously stated, Plaintiff does not allege jail officials prohibited or prevented him from exercising his religion; rather, his complaint evinces his dissatisfaction with the food he received and the meal service during Ramadan. His unhappiness with the food and meal service does not evince a discriminatory intent or a substantial burden on, the prevention of, or even the interference with, his religious exercise. Plaintiff has failed to state a claim for disparate treatment under the Equal Protection Clause.

## C.  Personal Involvement and Qualified Immunity

It is well-settled that a plaintiff in a civil rights case must demonstrate not only a constitutional violation, but also personal involvement on behalf of those alleged to have violated the plaintiff's constitutional rights. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Thompson v. Crnkovich*, No. 1:16-CV-055-BL, 2017 WL 5514519, at *2 (N.D. Tex. Nov. 16, 2017) ("Without

personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as a defendant.").

Here, because Plaintiff has failed to demonstrate a constitutional violation related to the meals served, and how those meals were served, to Plaintiff and other Muslim inmates during Ramadan, it necessarily follows that Defendants have had no personal involvement in a constitutional violation. Thus, Plaintiff has failed to show Defendants' personal involvement in any constitutional violation.

Defendants also argue they are entitled to qualified immunity. (Dkt. #18, pp. 6-9). The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Federal courts use a two-part test to determine whether defendants are entitled to qualified immunity. *Freeman v. Texas Dep't of Crim. Just.*, 369 F.3d 854, 863 (5th Cir. 2004). The first prong of the test requires the court to determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope*, 536 U.S. at 736; *Freeman*, 369 F.3d at 863. If a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Freeman*, 369 F.3d at 863. A defendant is entitled to qualified immunity if there is no constitutional violation or if the conduct did not violate clearly established law at the time. *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).

Here, as Plaintiff's allegations have not established a constitutional violation, Defendants are entitled to qualified immunity. *See Baughman v. Bowman*, No. 6:20CV560, 2024 WL 1248135,

at *14 (E.D. Tex. Feb. 7, 2024), *report and recommendation adopted*, No. 6:20-CV-560-JDK-KNM, 2024 WL 1251497 (E.D. Tex. Mar. 22, 2024).[2]

## D.  <u>Official Capacity Claims</u>

To the extent Plaintiff seeks to recover against Defendants in their official capacities, Plaintiff's claims are subject to dismissal.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Ky. v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Thus, any § 1983 claims against Defendants in their official capacities are, in effect, claims against Collin County. *See Bone v. Watt*, No. 4:21-cv-201, 2022 WL 912100, at *7 (E.D. Tex. Feb. 24, 2022) ("Plaintiff's § 1983 action against Sheriff [Skinner] in [his] official capacity is, in effect, a claim against [Collin] County.") (citations omitted) (alterations in original), *report and recommendation adopted*, No. 4:21-cv-201, 2022 WL 906191 (E.D. Tex. Mar. 27, 2022). A judgment against a public servant in his or her official capacity imposes liability on the entity that he or she represents, *see Marceaux v. Lafayette City-Par. Consol. Gov't*, 921 F. Supp. 2d 605, 623 (W.D. La. 2013); thus, a plaintiff's suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell*, 436 U.S. at 690 n.55; *see also Gage v. Valdez*, No. 3:16-cv-1360-B-BH, 2017 WL 4465765, at *3 (N.D. Tex. Aug. 21, 2017) ("Plaintiff's suit against the Sheriff in her official capacity is merely another way of pleading an action against her municipal employer, i.e., Dallas County."), *report and recommendation*

---

[2] Because the Court finds that Plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted and that Defendants are entitled to qualified immunity, the Court need not address Defendants' dismissal argument based on failure to exhaust under the PLRA. *See Jones v. Med. City of Denton*, No. 420CV00456RASCAN, 2023 WL 2672849, at *4 (E.D. Tex. Mar. 3, 2023), *report and recommendation adopted*, No. 4:20-CV-456, 2023 WL 2666070 (E.D. Tex. Mar. 27, 2023).

*adopted*, No. 3:16-cv-1360-B-BH, 2017 WL 4419041 (N.D. Tex. Oct. 4, 2017); *Sutherland v. Akin*, No. 4:19-cv-216-O, 2021 WL 462103, at *8 (N.D. Tex. Feb. 9, 2021) ("Sutherland's claims against the defendants [including a sheriff and county jail officers, among others,] in their official capacities as employees of the Wise or Tarrant County Jails are construed as claims against Wise County and Tarrant County.").

Under *Monell*, "municipalities may be sued under § 1983 but cannot be held liable for acts of their employees under a theory of *respondeat superior*." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). Rather, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Id.* (quoting *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017)); *see also Doe v. Harris Cnty.*, No. 21-20251, 2022 WL 220114, at *5 (5th Cir. Jan. 24, 2022) (per curiam) (applying the rule to claims asserted against a county entity). A policy constitutes the "moving force" behind an alleged violation if there is "'a direct causal link' between the policy and the violation." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). Additionally, "[t]he official policy itself must be unconstitutional or, if not, must have been adopted 'with deliberate indifference to the known or obvious fact that such constitutional violations would result.'" *James*, 577 F.3d at 617 (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004)).

Importantly, in the absence of any underlying constitutional violation, there can be no municipal liability under *Monell*. *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (holding that because there was no constitutional violation, there can be no *Monell* claims); *Brown*

14

*v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to demonstrate an underlying constitutional violation, the claims against the county and the officers in their official capacities failed); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014) (upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).

Review of the Complaint shows Plaintiff fails to plead sufficient allegations to state a plausible claim for relief of a violation of a constitutional right whose moving force was the policy or custom. As discussed above, Plaintiff's allegations that, during the month of Ramadan, he received cold meals and meals were delivered before sunset, do not allege a municipal custom or policy to violate the rights of Muslim inmates. Thus, any official capacity claims against Defendants should be dismissed.

**E. Punitive damages**

Although claims for compensatory damages may be barred in the absence of physical injury, the Fifth Circuit has recognized that a prisoner may recover nominal or punitive damages, despite a lack of physical injury, if he can successfully prove a constitutional violation under § 1983 and overcome a defense of qualified immunity. *Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007); *Anderson v. Black*, No. 6:17-cv-672, 2018 WL 3453485, at *5 (E.D. Tex. June 26, 2018), *report and recommendation adopted sub nom. Anderson v. Black*, No. 6:17-cv-672, 2018 WL 3438791 (E.D. Tex. July 16, 2018). Because Plaintiff fails to plead a constitutional violation and overcome the defense of qualified immunity, Plaintiff's claim for punitive damages should be dismissed.

**F. Leave to Amend**

Generally, a *pro se* plaintiff should be allowed to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020) (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003)). A district court may consider the following factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive on the plaintiff's part, repeated failures to cure deficiencies by previous amendments allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.*

Here, Plaintiff has provided no indication he would be able to cure the pleading deficiencies identified herein if he were allowed to amend his complaint. Under these circumstances, the Court finds granting Plaintiff leave to amend would be futile, would unnecessarily delay these proceedings, and would prejudice Defendants, who have already filed a motion to dismiss and would likely file an additional motion to dismiss if an amended complaint were filed.

**G. Strike under 28 U.S.C. § 1915(g)**

Under the PLRA, an inmate may not file any lawsuit or appeal *in forma pauperis* if he has three or more lawsuits or appeals previously dismissed as "frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statutory provision was designed to stop abusive litigious practices employed by inmates.

Because the Court is recommending dismissal of Plaintiff's claims in this case for failing to state a claim upon which relief may be granted, it is further recommended Plaintiff be advised

this dismissal counts as a strike pursuant to 28 U.S.C. § 1915, and should he accumulate three strikes, he may be denied *in forma pauperis* status and be required to pay the full filing fee when filing additional civil actions or appeals unless he demonstrates he is in imminent danger of serious physical injury.

## IV.  RECOMMENDATION

For the reasons set forth above, the Court recommends the Motion to Dismiss (Dkt. #18) be **GRANTED** and Plaintiff's lawsuit be **DISMISSED WITH PREJUDICE**. The Court further recommends this dismissal be counted as a strike pursuant to 28 U.S.C. § 1915.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 13th day of June, 2024.**

17

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE